HORACE FARQUHAR, AS PRESIDENT OF THE IMPERIAL FIRE IN-
SURANCE COMPANY, Respondent, *against* EDGAR W. CRO-
WELL, Appellant.

(Decided June 7th, 1880.)

By an agreement for the employment of the defendant, for a term of seven
years, as resident manager for a foreign insurance company, his com-
pensation was to be a share in certain commissions, to be divided three-
fourths to him and one-fourth to the chairman of the local board, subject
to the following conditions: the first year the defendant to receive the
commissions until they should amount to the sum of $7,500, the excess
to the extent of $3,000 to be applied in payment of the salary of the
general agent; the second year the defendant to receive first $8,500, then
the salary of the general agent to be paid out of any excess of his three-
fourths share; the third and subsequent years, after payment to the
defendant first of $10,000, the salary of the general agent to be defrayed
out of his three-fourths proportion. More than a year before the expira-
tion of this agreement the person who had been employed by the de-
fendant as general agent or chief assistant, at a salary of $3,000 per year,
resigned, and the defendant did not thereafter employ any one to succeed
him, although the proceeds to the defendant of his share of the commis-
sions amounted to more than $13,000 per year during the remainder of
the term of the agreement. After its expiration, the company brought
an action to recover from the defendant the amount which might have
been applied by him to the payment of the salary of such chief assistant
during the time that none was employed by him, at the rate of $3,000
per year. At the trial, evidence offered by the defendant that, in conse-
quence of the falling off of the business of the company, the necessity for
such employment no longer existed, and that the defendant himself did
the work, was excluded. *Held*, that this was error, for which a judg-
ment in favor of the company should be reversed.

APPEAL from a judgment of this court entered upon find-
ings of the judge on a trial without a jury.

The plaintiff was the president of the Imperial Fire Insur-
ance Company, a joint stock company having its principal
office in London, England; and Mr. E. M. Archibald, the
British consul at this port, was chairman of the local board of
directors of the company.

Certain negotiations having been had between him and the defendant in respect to the employment of the defendant as the manager of the business of the company in this country, an agreement was entered into on the 1st of May, 1868, between Archibald and the defendant, by which the defendant was employed as such resident manager. The terms of the agreement were:

1st. A written contract or agreement was to be entered into between the Imperial Fire Insurance Company with Crowell and Archibald, for a period of seven years, for the management of the United States branch of the company, which should comprehend all the States east of the Rocky Mountains, and in which contract Crowell was to be recognized and styled as resident manager.

2d. That as resident manager, Crowell was to have the appointment of assistant manager or general agent, and of such clerks and other officers as might be necessary to the general management and direction of all insurance details, subject always to such instructions as might be received from time to time from the London board.

3d. The compensation for the management of this branch was to be a commission of five per cent. on premiums received, and a contingent commission of ten per cent. on the net profit, to be stated annually. Such commissions to be divided as follows, namely: To Crowell three-fourths, and to Archibald one-fourth, subject to the following conditions, namely: The first year Crowell to receive the commissions until they amounted to the sum of $7,500, the excess, to the extent of $3,000, to be applied in payment of the salary of the general agent; and the residue, to the extent of one-fourth of the whole, to Archibald. The second year Crowell to receive, first, $8,500, and then the salary of the general agent to be paid out of any excess of Crowell's three-fourths share; if not sufficient, the deficiency to be paid out of Archibald's proportion. The third and subsequent years, after payment to Crowell first of $10,000, the salary of the general agent to be paid out of Crowell's three-fourths proportion.

The business of the company from the 1st of May, 1868,

to December, 1873, was continued under this arrangement. On the 3rd day of December, 1873, an agreement was entered into directly between the directors of the insurance company and the defendant, wherein is recited the agreement above mentioned between Mr. Archibald and the defendant, and the fact that it was to continue for seven years, which would expire on the 31st of December, 1875, that his remuneration was to be 3¾ per cent. commission on premiums, subject to the payment of one chief assistant, and 7⅝ per cent. commission on profits, on account of which the defendant received in June 1869, the sum of £1,515 4s. 8d. The last mentioned agreement then provides as follows: It is admitted and agreed between the directors of said company on behalf of said company, of the one part, and the said Edgar William Crowell of the other part, as follows: That said arrangement was made for the period or term of years, which will expire on the 31st of December, 1875, and that such arrangement shall (subject to the modifications thereof after stated) be continued and carried out up to the said 31st of December, 1875. That the sum of £1,515 4s. 8d. so received by the said Edgar William Crowell in June, 1869, shall be deemed to be and is hereby accepted by him in full for all allowances or commission on profits under the said arrangement, from the commencement thereof up to the 31st day of December, 1875, the termination thereof, and that the said Edgar William Crowell shall continue to receive the 3¾ per cent. commission on premiums on insurance up to the said 31st day of December, 1875, subject to the payment of one chief assistant as aforesaid.

The defendant acted as resident manager until December 31st, 1875, and the proceeds of his 3¾ per cent. commissions were more than $13,000 during each year. On the 31st of May, 1874, Taylor, the person who was theretofore acting as chief assistant, resigned, and the defendant did not appoint any person to succeed him. At the trial before the court without a jury, a jury trial having been waived by consent, the defendant offered to prove that in consequence of the falling off of the business of the company, the necessity no longer existed for an assistant manager, and that the defendant did the work.

This offer was excluded. The court having found that the company were entitled to receive from the defendant the amount of the salary of the chief assistant, if such assistant was not employed, a judgment for the plaintiff was entered on the findings. From that judgment the defendant appealed.

*Thomas E. Stillman*, for appellant.

*F. C. Cantine*, for respondent.

VAN BRUNT, J.—[After stating the facts as above.]—It is to be observed in the consideration of the only question presented upon this appeal, that the agreement entered into in December, 1863, nowhere claims to modify the agreement of May, 1868, except in one particular, and that is that the defendant shall have no further claim for a contingent commission of 10 per cent. on the net profits provided for in the agreement of May 1, 1868. The language of the agreement of December, 1873, in reference to the other compensation which the defendant was expected to receive, was entirely in the way of a recital, which recital was not entirely correct, and the terms of the agreement of 1873 are a mere reiteration of the terms of the agreement of 1868.

It is to be observed that the agreement of 1868 is expressly ratified by the agreement of 1873, subject to the modifications stated in the agreement of 1873, and the only modification mentioned in the agreement of 1873 is that Crowell agrees to accept in full for all allowances or commission on profits the sum of £1,515 4s. 8d. It provides that Crowell shall continue to receive the balance of his commissions under the agreement of May 1, 1868.

It is therefore necessary for us to determine what construction is to be placed upon the rights of the parties to these commissions under that agreement of May 1, 1868. This agreement provides that the commissions are to be divided as follows : Crowell to receive three-fourths and Archibald one-fourth, subject to the following conditions : The first year Crowell to receive $7,500 absolutely, and if the commissions

exceed that amount, then out of the excess of his three-fourths, Crowell is to pay the salary of the general agent, and Archibald is to receive his one-fourth ; the second year Crowell is to receive $8,500 absolutely, then the salary of the general agent to be paid out of any excess of Crowell's three-fourths share, and the third year Crowell is to receive absolutely $10,000, the salary of the general agent to be paid out of the excess of his three-fourths proportion.

Thus the whole language of the agreement is that three-fourths shall belong to Crowell and one-fourth of the commission belongs to Archibald, and that Crowell agrees in case his three-fourths of the commissions amount to over $10,000 a year, that he will devote the excess so far as may be necessary to the payment of the salary of a general agent.

There is no intimation that any part of these three-fourths of the commissions should in any event be considered as the property of the company.

It would undoubtedly have been Crowell's duty to appoint such an officer if necessary, but there is no clause in the agreement which requires him to employ any person at any given salary to perform the duties of a general agent. It is true that the words " to the extent of three thousand dollars to be applied in payment of the salary of a general agent," are used in respect to the salary of the general agent for the first year; but it is somewhat significant that the salary of the general agent is nowhere subsequently mentioned or referred to in connection with the second, third and subsequent years. It would seem to indicate that even if it was necessary to pay a general agent more than $3,000 for the second, third and subsequent years and Mr. Crowell's excess amounted to sufficient to pay such increased salary, that he would have been required to pay it, if such agent was employed. The converse proposition would seem equally true. If Mr. Crowell could acquire the services of a general agent competent to perform the duties belonging to that position at a lower rate than $3,000, there is nothing in the agreement which prohibits him from making such employment, and as a consequence, if the services of a general agent in consequence of the loss of business could

Farquhar *v.* Crowell.

become entirely unnecessary I can see no requirement for such employment by Mr. Crowell. The evidence of the want of any necessity for such employment was excluded.

It would seem to have been Mr. Crowell's duty to show that there was no reason for the continuation of the employment of such general agent, and that all the work which he could have done was satisfactorily done by the defendant himself.

Under such circumstances it does not appear that the defendant was called upon to pay out of his commissions the salary of a useless employe.

It is true that a different view may be taken of this agreement, but I can not conceive how the company could in any event claim any portion of the commissions which are stated distinctly to be defendant's, and the defendant has received during the time covered by the complaint no more than his three-fourths commission provided for in the agreement.

I cannot, therefore, concur in the construction of this agreement which has been placed upon it by the learned judge below, and think that if the defendant Crowell had shown upon the trial that in consequence of the decrease of business, there was no necessity for the employment of a general agent, and that all the duties which could have been performed by such general agent were performed by himself without detriment to the business of the company, the defendant should have been entitled to judgment.

The judgment must be reversed and a new trial ordered, with costs to the appellant to abide the event.

LARREMORE, J., concurred.

Judgment reversed and new trial ordered, with costs to appellant to abide event.*

---

* The order entered on this decision was affirmed by the court of ap peals, and judgment absolute ordered for the defendant, January 17th, 1882.